UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| FREDERICK K. SLAYTON and ANN SLAYTON, | ) | No. 06 B 2826 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| FREDERICK K. SLAYTON and ANN SLAYTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 09 A 100 |
| | ) | |
| JESSE WHITE, Secretary of State for the State of Illinois, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling is the motion of Illinois Secretary of State Jesse White (the "Secretary") to dismiss the adversary complaint of plaintiffs Frederick K. Slayton ("Frederick") and Ann Slayton ("Ann") (collectively, the "Slaytons"). The Slaytons allege that the Secretary has suspended their driving privileges and placed a hold on their vehicle registrations and license plates in an attempt to collect debts discharged in the Slaytons' 2006 chapter 7 bankruptcy case. The Secretary moves to dismiss the complaint for lack of subject matter jurisdiction under the Eleventh Amendment, as barred by the doctrine of claim preclusion, and on the basis of *Younger* abstention.

For the reasons that follow, the Secretary's motion will be granted as to the Slaytons' claims for punitive damages. Those claims will be dismissed as unauthorized by section 106(a)(3) of the Bankruptcy Code and therefore barred by the Eleventh Amendment. In all other respects, the motion will be denied.

### 1. Facts

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) (made applicable by Fed. R. Bankr. P. 7012(b)), the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008).[1/] The court can also look beyond the complaint's allegations and consider "whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (internal quotation omitted). The following facts are therefore drawn from the complaint and from the sheaf of papers the Secretary has attached to his motion.

The Slaytons own and operate commercial vehicles for hire and did business in the past through a corporation called Rocks Ann Trucking, Inc. The precise relationship between the Slaytons and Rocks Ann Trucking is unclear, but it appears that Ann, at least, was an officer of the corporation.

Rocks Ann Trucking filed a chapter 11 bankruptcy case in June 2005. At

---

[1/]　Eleventh Amendment immunity is jurisdictional, *see Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), and is properly raised under Rule 12(b)(1), 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 at 70-79 (3d ed. 2004).

least some of the assets of the corporation were sold at a court-ordered auction, and the case was dismissed in December 2005. Two months later, Rocks Ann Trucking was involuntarily dissolved. In March 2006, the Slaytons filed a chapter 7 bankruptcy case of their own. They received their discharge in August 2006, and the case was closed in March 2007.

In May 2007, well after the Slaytons' discharge, the Secretary sent a letter to "Rocks-Ann" stating that his office had cancelled "your Illinois drivers license" because of an unpaid $245 check that Rocks Ann Trucking had issued to the Secretary on September 3, 2005, in payment of two special hauling vehicle licenses. The driver's license mentioned in the letter belonged to Frederick. That same month, the Secretary sent a second letter to "Rocks-Ann" stating that his office had cancelled "your Illinois drivers license" because of the unpaid $245 check. The second letter was identical to the first, except that the driver's license mentioned belonged to Ann.

Around this time, Frederick learned that the debt mentioned in the letters was not the only debt Rocks Ann Trucking owed the Secretary. Rocks Ann Trucking owed $8,811 in connection with several semi-trailer tractors, at least two of which had been sold in the company's bankruptcy.

In June 2007, the Secretary formally canceled Frederick's driver's license. The next month, the Slaytons paid the amount due under the May 23 letters, and after a hearing the Secretary rescinded the cancellation of Frederick's driver's license. But the respite was only temporary. Frederick's license was suspended

again because of the debt Rocks Ann Trucking owed in connection with the tractors. The Secretary has since canceled all of the Slaytons' personal and commercial driver's licenses and continues to place a hold on all licenses, registrations, and license plates belonging to the Slaytons and any company they attempt to operate.

In September 2007, Frederick filed an action against the Secretary in Illinois state court. His complaint sought a writ of mandamus directing the Secretary to rescind the cancellation of the Slaytons' driver's licenses and remove all holds on registrations and license plates of vehicles belonging to the Slaytons or their companies. The complaint also sought a declaration rescinding any settlement agreement between the Slaytons and the Secretary. The complaint was later amended to add Ann as a plaintiff.

The Secretary moved to dismiss the Slaytons' amended complaint. In May 2008, the state court continued the motion and ordered the Secretary to hold an expedited administrative hearing "regarding the suspensions and/or cancellations of Petitioners' driver's licenses and/or registrations and license plates." The hearing was held, and the hearing officer issued findings and recommendations in which he rejected the Slaytons' arguments. Among the arguments he rejected was one based on the Slaytons' discharge in their bankruptcy case. The hearing officer accordingly recommended that the Secretary deny the Slaytons' petition to rescind the "stops" on their driving records. On June 30, 2008, the Secretary entered a final order adopting the hearing officer's findings and denying the petition. The Slaytons did not seek review of the final administrative decision in Illinois state court.

Instead, the parties returned to the state court, which held a hearing on the Secretary's continued motion to dismiss. In August 2008, the court issued an order granting the motion and dismissing the Slaytons' claims "relating to the registration and titles of license plates [sic]" because the Slaytons had "failed to exhaust their administrative remedies with respect to such claims." The court denied the motion, however, "with respect to the remainder of Plaintiffs' claims."

In January 2009, the Slaytons moved to reopen their chapter 7 case to file their adversary complaint against the Secretary. The case was reopened, and the adversary proceeding was commenced. The complaint has two counts. Count I is a claim for violation of the discharge injunction in section 524(a)(2) of the Code, 11 U.S.C. § 524(a)(2). In Count I, the Slaytons request injunctive relief, actual and punitive damages, and attorney's fees and costs. Count II is a claim for violation of section 525(a) of the Code, 11 U.S.C. § 525(a), which prohibits a governmental unit from denying, revoking, suspending, or refusing to renew a license because, among other reasons, a debtor has not paid a debt dischargeable in his bankruptcy case. The Slaytons request the same relief in Count II.[2]

---

[2] The complaint characterizes each claim as one for "contempt and sanctions." A violation of the discharge injunction is indeed contempt, *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001), but as such it is properly raised by motion, not through an adversary proceeding, *Enodis Corp. v. Employers Ins. of Wausau (In re Consol. Indus. Corp.)*, 360 F.3d 712, 716 (7th Cir. 2004) (noting that contempt "is a method of enforcing a court order, and not an independent cause of action"). A violation of section 525 is not contempt, *In re Hopkins*, 66 B.R. 828, 834 (Bankr. W.D. Ark. 1986), and an adversary proceeding is the proper mechanism for seeking damages resulting from that violation, Fed. R. Bankr. P. 7001(1).

## 2. Discussion

The Secretary contends that Counts I and II should be dismissed because he is immune from suit under the Eleventh Amendment to the U.S. Constitution, because both counts are barred under the doctrine of claim preclusion, or because abstention is warranted under *Younger v. Harris*, 401 U.S. 37 (1971). Of these, only the Eleventh Amendment contention has any merit, and then only to the extent the Slaytons request punitive damages. The Secretary is not immune from the remaining claims, his claim preclusion argument is premature, and this case does not call for *Younger* abstention.

### a. Eleventh Amendment

The Secretary first contends he is immune from suit, and the court lacks jurisdiction, under the Eleventh Amendment's grant of sovereign immunity. In support of this contention, he relies on *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996), and *Nelson v. La Crosse County Dist. Att'y*, 301 F.3d 820 (7th Cir. 2002). As the Slaytons rightly point out, however, the Secretary's reliance on these cases suggests he is a bit behind the times.

The Eleventh Amendment declares that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Despite its literal terms, the Amendment has consistently been held to bar suits against a state brought by its own citizens as well as by citizens of other states. *Edelman v.*

-6-

*Jordan*, 415 U.S. 651, 662-63 (1974); *see Hans v. Louisiana*, 134 U.S. 1 (1890). The Amendment generally "bars actions in federal court against a state, state agencies, and state officials acting in their official capacities." *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007).

Traditionally, there have been three exceptions to Eleventh Amendment immunity. First, a state may waive immunity by consenting to be sued in federal court. *Id.* Second, Congress may abrogate the state's immunity "through a valid exercise of its powers." *Id.*; *see also Toeller v. Wisconsin Dep't of Corrections*, 461 F.3d 871, 875 (7th Cir. 2006). And third, under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may "file 'suit[ ] against state officials seeking prospective equitable relief for ongoing violations of federal law.'" *Peirick*, 510 F.3d at 695 (quoting *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997)). In section 106(a) of the Bankruptcy Code, Congress sought to employ the second of these exceptions, abrogating the sovereign immunity of every "governmental unit" with respect to many sections of the Code, including sections 524 and 525 under which the Slaytons have brought their claims. *See* 11 U.S.C. § 106(a).

But was this abrogation a valid exercise of Congressional power? The Secretary argues it was not. And if *Seminole Tribe* and *Nelson* represented the current state of the law, the Secretary's Eleventh Amendment argument would have more than a little traction. In *Seminole Tribe*, the Court overruled *Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989), and rejected the contention that Congress could validly abrogate a state's sovereign immunity under an Article I

-7-

power, specifically the Indian Commerce Clause. The Bankruptcy Clause of the Constitution is, of course, an Article I power. *See* U.S. Const. art. I, § 8, cl. 4. In *Nelson*, the Seventh Circuit relied on *Seminole Tribe* to hold that section 106(a) of the Code was not a valid abrogation of the states' Eleventh Amendment immunity. *Nelson*, 301 F.3d at 832. Under *Seminole Tribe* and *Nelson*, then, the Slaytons' action against the Secretary would likely be barred.[3/]

Two years after *Nelson*, however, the Supreme Court in *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004), addressed Eleventh Amendment immunity in the bankruptcy context and found no bar to a chapter 7 debtor's adversary proceeding against a state agency seeking the discharge of her student loan obligations as an undue hardship. *Id.* at 444-45. Rather than consider the problem as one of section 106(a) abrogation, the Court held that unconsenting states could be subjected to judicial actions that are *in rem* as opposed to *in personam*, *id.* at 446, and that the discharge of a debt in bankruptcy is "an *in rem* proceeding," *id.* at 447. A debtor seeking only the discharge of a debt, the Court reasoned, does not "subject an unwilling State to a coercive judicial process." *Id.* at 450. A discharge determination is therefore "not a suit against a State for purposes of the Eleventh Amendment." *Id.* at 451.

---

[3/]    Even under *Seminole Tribe* and *Nelson*, there would be the question of the Secretary's immunity to the Slaytons' request for prospective injunctive relief. In response to the Secretary's motion, the Slaytons invoke the exception to Eleventh Amendment immunity in *Ex parte Young*, 209 U.S. 123 (1908). As the discussion below shows, however, the Slaytons need not rely on the *Ex parte Young* exception to maintain their action, and so there is no need to determine the exception's applicability.

*Hood*, though, still did not decide the question that matters here: whether the Eleventh Amendment permits affirmative relief, such as money damages, against a state. The Court took up that question two years later in *Central Va. Cmty. College v. Katz*, 546 U.S. 356 (2006), which concerned a trustee's action to recover preferential payments made to state agencies. The Court in *Katz* reaffirmed *Hood*'s conclusion that the nature of bankruptcy jurisdiction is principally *in rem*, a form of jurisdiction whose "exercise does not, in the usual case, interfere with state sovereignty even when States' interests are affected." *Id.* at 369-70; *see also id.* at 362 (noting that *in rem* jurisdiction "does not implicate States' sovereignty to nearly the same degree as other kinds of jurisdiction").

But *Katz* went well beyond *Hood* and its focus on bankruptcy jurisdiction. The Court turned its attention to the adoption of the Bankruptcy Clause itself. The Bankruptcy Clause, the Court found, represented more than an effort to implement at a federal level the ability of equity courts to discharge a debtor's obligations through an *in rem* decree. It was aimed instead at eliminating the states' "patchwork of insolvency and bankruptcy laws," *id.* at 366, with their "wildly divergent schemes for discharging debtors and their debts," *id.* at 365, by giving Congress the power to enact national bankruptcy legislation, *id.* at 370. That power, moreover, was "understood to carry with it the power to subordinate state sovereignty." *Id.* at 377. In adopting the Bankruptcy Clause at the Constitutional Convention, the states thus "agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant

-9-

to 'Laws on the subject of Bankruptcies.'" *Id.*; *see also id.* at 378.[4]

Departing from *Seminole Tribe*'s analysis (at least where bankruptcy is concerned), *Katz* held that the "relevant question is not whether Congress has 'abrogated' States' immunity in proceedings to recover preferential transfers." *Id.* at 379 (citing 11 U.S.C. § 106(a)). The question, rather, "is whether Congress' determination that States should be amenable to such proceedings is within the scope of its power to enact 'Laws on the subject of Bankruptcies.'" *Id.* That, in turn, depends on whether the bankruptcy proceeding is either *in rem* or at least "ancillary to" the bankruptcy court's *in rem* jurisdiction. *Id.* at 371, 373.[5] It also depends on the scope of section 106(a): states have immunity in *in rem* proceedings or matters ancillary to them only to the extent Congress authorizes. *See* Ralph Brubaker, *Explaining Katz's New Bankruptcy Exception to State Sovereign Immunity: The Bankruptcy Power as a Federal Forum Power*, 15 Am. Bankr. Inst. L. Rev. 95, 96 (2007).[6]

---

[4] Because the Court in *Katz* adopted the "plan of the Convention" theory that the Seventh Circuit had rejected in *Nelson*, 301 F.3d at 833, as "clearly untenable under *Seminole Tribe* and its progeny," *Nelson* is no longer good law.

[5] Some scholars have suggested that *Katz* signals the end of Eleventh Amendment immunity in bankruptcy. *See, e.g.*, Charles Jordan Tabb, *The Law of Bankruptcy* § 1.10 at 69 (2d ed. 2009) ("Bottom line: states can be sued in federal bankruptcy court, just like any other creditor.") Whether they are right turns on what it means for a proceeding to be "ancillary" to *in rem* bankruptcy jurisdiction. That question need not be answered here.

[6] The Secretary argues that under *Seminole Tribe*, section 106(a) is an unconstitutional abrogation of Eleventh Amendment immunity. *Katz* dispels any doubt about the constitutionality of section 106(a) or, for that matter, any need for a Code provision abrogating Eleventh Amendment immunity in the first place.

In this case, both of the Slaytons' claims are ancillary to an *in rem* proceeding. In Count I of their complaint, the Slaytons seek to enforce the discharge and request injunctive relief, actual and punitive damages, and attorneys' fees and costs. The discharge is a fundamental *in rem* feature of bankruptcy by which the states are bound. *Katz*, 546 U.S. at 364; *Hood*, 541 U.S. at 448. Injunctive relief, damages, and attorneys' fees, though seemingly *in personam* remedies, are ancillary to the Slaytons' *in rem* proceeding because those remedies serve as mechanisms for enforcement of the discharge. *See Florida Dep't of Revenue v. Omine (In re Omine)*, 485 F.3d 1305, 1313-14 (11th Cir. 2007) (holding that the Eleventh Amendment does not bar an award of damages, fees, and costs for a violation of the automatic stay), *opinion withdrawn pursuant to settlement*, No. 06-11655-II, 2007 WL 6813797 (11th Cir. June 26, 2007); *Mini v. California Bd. of Equalization (In re Mini)*, Nos. 01-43201 TG, 06-4219 AT, 2007 WL 2223820, at *5 (Bankr. N.D. Cal. July 30, 2007) (finding no Eleventh Amendment bar to injunctive relief, fees, and costs for a violation of the discharge injunction).

Section 106(a), meanwhile, expressly subjects the Secretary to the discharge injunction and authorizes all but one of the Slaytons' requested remedies. Under section 106(a)(1), a governmental unit (defined in section 101(27) to include a "State" and an "instrumentality of . . . a State," 11 U.S.C. § 101(27)) has no immunity with respect to section "524 . . . of this title" – the section imposing the discharge injunction. 11 U.S.C. § 106(a)(1). Under section 106(a)(3), the court "may issue against a governmental unit an order, process, or judgment" under section

524, "including an order or judgment awarding a money recovery, but not including an award of punitive damages." 11 U.S.C. § 106(a)(3). The Secretary, then, has immunity only from the Slaytons' punitive damage claim in Count I.

The same analysis holds for Count II of the complaint, the claim for violation of section 525(a), the anti-discrimination provision. Count II is based on the same facts as Count I, the impermissible discrimination consisting of the Secretary's effort to collect discharged debts by suspending the Slaytons' driving privileges, registrations, and license plates. Because Count II also concerns the discharge, the proceeding is *in rem*, and injunctive and monetary remedies are ancillary to the proceeding. *See Omine*, 485 F.3d at 1313-14; *Mini*, 2007 WL 2223820, at *5.[7/] Section 106(a)(1), in turn, provides that the Secretary (as a "governmental unit") has no immunity from section "525 . . . of this title," and section 106(a)(3) subjects him to a judgment under that section that includes a monetary recovery other than one of punitive damages.

In short, the Eleventh Amendment world has changed substantially since the cases the Secretary cites were decided. Whatever merit his Eleventh Amendment argument had immediately after *Seminole Tribe*, it has little going for it after *Hood*

---

[7/] The section 525 claim here survives the Eleventh Amendment because of its connection to the discharge: the Slaytons accuse the Secretary of refusing to renew their licenses, registrations, and license plates because they failed to pay a debt "dischargeable in the case under this title." 11 U.S.C. § 525(a). Theoretically, at least, a debtor's claim that the government violated section 525 for some other reason might not bear the same close relationship to a proceeding in bankruptcy the Court in *Hood* and *Katz* characterized as *in rem*. In that situation, the outcome on the Eleventh Amendment question could be different.

and *Katz*. The Secretary's motion to dismiss the complaint as barred by the Eleventh Amendment will therefore be denied, except as to the Slaytons' claims for punitive damages. Those claims will be dismissed.

### b. Claim Preclusion

The Secretary next contends that the complaint should be dismissed as barred under the doctrine of claim preclusion. He asserts that the Slaytons raised their section 524(a)(2) defense in the administrative proceeding, the agency ruled against them, and the Slaytons failed to seek review of the final administrative decision, barring them from raising the defense now. He also asserts that the state court's order dismissing one count of the Slaytons' two-count mandamus complaint has preclusive effect.

Whatever prospects these claim preclusion arguments may have,[8] the arguments are premature at this stage of the case. Under Rule 8(c) (made applicable by Fed. R. Bankr. P. 7008(a)), claim preclusion (termed "res judicata" in the Rule) is an affirmative defense. *See Dupuy v. McEwen*, 495 F.3d 807, 810 (7th Cir. 2007); *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 664 (7th Cir. 2007). An affirmative defense provides no basis for dismissal of a complaint under Rule 12(b) unless the defense "is disclosed in the complaint." *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); *see also Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th

---

[8] The prospects for the first argument, at least, appear dim. *See Hamilton v. Hamilton (In re Hamilton)*, 540 F.3d 367, 373 (6th Cir. 2008) (holding void *ab initio* a state court judgment against a debtor who neglected to plead the discharge injunction as a defense to the state court action).

Cir. 2003).

In this case, the facts relevant to the Secretary's claim preclusion defense are not evident from the Slaytons' complaint, which mentions the state court action but says nothing about its status and does not mention the administrative proceeding at all. The Secretary has supplied that information through the documents attached to his motion. The documents, however, are not cognizable on a motion to dismiss under Rule 12(b)(6). *See Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); *see, e.g., Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008). Should he see fit, the Secretary can raise his claim preclusion defense again on summary judgment.[9]

The motion to dismiss on claim preclusion grounds will be denied.

### c. *Younger* abstention

Finally, the Secretary contends that the court should dismiss the Slaytons' action because *Younger v. Harris*, 401 U.S. 37 (1971), requires abstention in favor of the pending state court litigation. The Slaytons have not responded to this

---

[9] Technically, the Secretary's current motion could be converted to one for summary judgment. *See* Fed. R. Civ. P. 12(d) (made applicable by Fed. R. Bankr. P. 7012(b)) (requiring a Rule 12(b)(6) motion to be treated as one for summary judgment when supporting materials are submitted and not excluded); *see, e.g., Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (motion converted where the defendant sought dismissal based on an affirmative defense and submitted supporting materials). Courts, however, have "complete discretion" when it comes to conversion. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1366 at 159 (3d ed. 2004). Conversion is not appropriate here, and the Secretary's materials have been considered only in connection with his Eleventh Amendment argument.

contention, but the right response is straightforward: *Younger* abstention does not apply under the circumstances of this case.[10]

*Younger* holds that "absent extraordinary circumstances federal courts should abstain from enjoining ongoing state criminal proceedings." *Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir. 1995). The doctrine is based primarily on "comity," meaning

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger*, 401 U.S. at 44. Although *Younger* originally concerned federal interference with state criminal prosecutions, the doctrine has since been extended to state civil proceedings "implicating important state interests." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 n.5 (7th Cir. 2007) (internal quotations omitted).

*Younger* abstention is inapplicable here, not because the state's interests are unimportant (a question that need not be reached), but because the same parties commenced the state action and the federal action: the Slaytons are the plaintiffs both in the state court and in this court. "*Younger* abstention is appropriate only

---

[10] Unlike the Eleventh Amendment, *Younger* abstention is not jurisdictional, *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995, 997 (7th Cir. 2000); Erwin Chemerinsky, *Federal Jurisdiction* § 12.1 at 783 (5th ed. 2007), but is often raised through a Rule 12(b)(1) motion, 5B Charles Alan Wright & Arthur R. Miller, *supra*, § 1350 at 96-100; *see, e.g., Beres v. Village of Huntley*, 824 F. Supp. 763, 766 (N.D. Ill. 1992). In this case, however, it is unnecessary to consider any facts beyond the pleadings in ruling on the Secretary's abstention request.

when there is an action in state court *against* the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." *Forty One News*, 491 F.3d at 665 (emphasis added). When the federal plaintiff is also the state plaintiff, so that the federal and state actions are procedurally parallel, *Younger* is irrelevant. *Nader v. Keith*, 385 F.3d 729, 731-32 (7th Cir. 2004) (finding *Younger* argument "frivolous[ ]" where a political candidate was the plaintiff in both the federal and state actions and was "merely . . . pursuing parallel remedies against the state's refusal to certify him as a candidate"); *Beary Landscaping, Inc. v. Ludwig*, 479 F. Supp. 2d 857, 866-67 (N.D. Ill. 2007) (refusing to abstain under *Younger* partly for this reason).

Because this case is not a candidate for *Younger* abstention, the Secretary's motion to dismiss on the basis of *Younger* will be denied as well.

### 3. Conclusion

The motion of Illinois Secretary of State Jesse White to dismiss the adversary complaint of Frederick and Ann Slayton is granted in part and denied in part. The motion is granted as to the claims for punitive damages, and those claims are dismissed. The remainder of the motion is denied. A separate order will be entered consistent with this opinion.

Dated: August 7, 2009

_____
A. Benjamin Goldgar
United States Bankruptcy Judge